Good morning. This case is number 2240637, Women's Elevated Sober Living and Ms. Jones v. City of Plano, and we'll hear first from Mr. Jefferson. Good morning, and may it please the Court. Plano recognizes the value of sober homes. Its ordinance accommodates for disabilities. The established occupancy limit for unrelated people in a residential home is four, but Plano allows, through its accommodation, up to ten. In a non-residential area, Plano increases the accommodation to 15. So we are not here in any way to challenge the FHA's requirement that Plano accommodate disabilities. The question, instead, is what standard does the FHA impose? Under the FHA, the plaintiff must prove that its requested accommodation is necessary, and necessary means indispensable, required, essential. Proving that an accommodation is merely beneficial is not enough. Now, six circuits have adopted this definition of necessary. This Court applied that definition in an unpublished decision, Harmony House, and no circuit has accepted or adopted a watered-down version. The district court recited a correct definition of necessary, but did not apply it to the evidence. There is no evidence that 15 residents, the requested accommodation is required for the sober house to be therapeutically effective. Is there a way to read the expert's testimony, if you will, so he doesn't utter the magic words? Generally, we steer clear of talismanic words, etc., etc., but in your view, must he have said, you know, used the words necessity as opposed to, you know, what he did? So, I don't think there's a talismanic requirement here. It's not a magic word, but there is the word necessary that has been interpreted, and what the plaintiff's theory was, and the expert, Dr. Major's theory, was that more residents are always better because they prevent isolation and ensures that every resident has a roommate. But this Court analyzed that very theory and rejected it on almost identical evidence in Harmony House. I understand it's an unpublished opinion, but it is the same opinion and the same analysis that other circuits have adopted. For example, the First Circuit rejected similar reasoning in the Bryant Woods v. Howard County case, noting that the plaintiff's expert's analysis there, like ours, would permit a 10-story building housing 75 residents. Women's Elevated also uses a more is better theory to justify . . . it could justify 20, 30, 50, or more. There's no limiting principle to that theory, and that is contrary to the FHA's necessary requirement. So, we ask that this Court reverse the district court's judgment and render judgment for Plano. Mr. Jefferson. Yes, Your Honor. The district court seemed to label the necessary finding as a fact finding, and if it were, of course, we would be reviewing it, as you know, under a clear error standard. Is it your view that that is correct? Is it purely a fact finding, or is it something different? So, I think the clear error standard is not the correct standard. I think that this is a legal question. The question is, what does necessary mean as a legal requirement? And what the district court determined was that the accommodation was necessary. That was erroneous as a matter of law. We believe that the standard, therefore, is de novo review on that question of law. And I say that because—let me just set the stage. Under every circuit that has looked at this question, necessary is defined as essential, as I've said, indispensable, and not merely preferable. The Vorkheimer from the Third Circuit case is very good in that it recognizes this is a very high standard. Six circuits agree, the Third, Fourth, Fifth, Sixth, Ninth, and Tenth, and no circuit has adopted a different definition. The U.S., in its amicus brief here, contends that a weaker standard is appropriate, and they define it as amelioration of the disability. But that standard was explicitly rejected in Cinnamon Hills and in Vorkheimer. Let me ask you this. In Harmony House, the one you alluded to, the unpublished one, there was a struggle over whether 12 was necessary or what the number was. Judge Barstow says, but Harmony House has not met its burden to show that it needs 12 residents to prevent isolation. And then he goes on and on. And in the holding, he says, because of finding that Harmony House is not financially able—I mean, it goes through. I guess my question is, the way your opinion is framed, it seemed that it was a fact issue. And the court held that Harmony House had failed to satisfy its burden, whatever necessarily means that it had failed to satisfy its burden. So I'm just sort of coming back to the question Judge Duncan asked you. Did that case turn more on a proof issue, you follow me, a factual determination, as opposed to coming down on what number is necessary or some utterance of the claim? You follow me? I do follow you, Your Honor. And I think, as in Harmony House, what this court is looking at is a district court finding that a reasonable accommodation was required, and then this court reversed and rendered as a matter of law. And I think the same question is at play here. So the district court found that 15 was necessary under the FHA. And we believe that what this court's task now is to evaluate that conclusion against the evidence that was presented. And so let me just proffer, you know, a hypothesis. You know, what if the expert said, yes, it's necessary, but every fact that the expert testified about showed that it was merely preferable or beneficial to have 15? Is that a question of fact or is that a question of law? We believe it's a question of law under these circumstances. And the reason I say that is because you can look at the expert's definition itself. Dr. Major said 15 is necessary, but he defines necessary. Dr. Major himself defines necessary differently than the courts. All the circuits defines the FHA. He says, I'm quoting here from the record at pages 2502 to 2503. He says, quote, improving the odds of staying sober makes it necessary for them to have 15 residents at minimum. Improving the odds is his definition of what is necessary. What he is saying is it is better if you have more residents than if you have less. But that is not the way the word necessary is interpreted and it's not the way it's been analyzed by any of the circuits. He never testified that without 15 residents, the sober house would not be therapeutically meaningful. His testimony is really the opposite. He says that less than 15 is meaningful. He says my opinion is simple, that you're going to get therapeutic benefit regardless of what number we're talking about, but when you increase the numbers, you're going to increase the therapeutic benefit. So his more is better testimony. It may establish for this sober living arrangement that 15 is preferable to some lesser number, but it doesn't satisfy the FHA's necessary requirement. And the district court did not measure the evidence by that correct standard, which is essential and not merely preferable. Your Honor mentioned Harmony House, and I would just say look at you compare the facts. Harmony House in this case are almost identical in the facts. There the court refers to finding that the accommodation was necessary because the evidence did not meet the demanding legal standard. And the evidence is strikingly similar. They said in Harmony House more residents were desirable to prevent isolation, to provide mentors to newer residents, and to ensure that every resident had a roommate. That evidence, that whole combination of factors did not meet the definition of necessary in Harmony House, and it doesn't meet it here. And Harmony House is strongly reasoned, and it's consistent with the other circuits, and the plaintiffs do not argue otherwise. Instead, they attempt to distinguish Harmony House. But I don't think under this record that attempt to distinguish that case works. And so on every ground that we look at, they have failed to show that this is necessary. On page 10 and 11 of our reply brief, there's a footnote, footnote number one. And if you look at that footnote, it encapsulates what Dr. Major's testimony was, and it is all of the more is better variety. And, Your Honor, I'm not here to tell you that more is not better. I mean, it could be, you know, if you had two times the number that they've requested. If you had 30, that might be better therapeutically. But is it necessary to accommodate this interest? And they have no evidence whatsoever on that. So they didn't meet their burden to show that their desired number was necessary, and they did not disprove any other alternative. They didn't disprove that the ordinance that Plano has in place would be insufficient, would be therapeutically insufficient to guard their interest. There are two other points that we could make. I think I'll reserve them unless the Court has questions. But one has to do with the attorney's fees and whether, regardless of liability, the award must be reversed and remanded for reconsideration. I think our briefing is adequate on that point. They lost on virtually every claim that they presented to the Court, both in terms of injunctive relief, in terms of damages, in terms of punitive damages. They received nominal damages for the award, and it was centered only on this one luxury house on the Gulf Coast. And the second is their cross-appeal on lost profits. And it is hard to better encapsulate the district court's ruling on their lost profits theory. The district court said that their claim was simply a number invented post-trial by counsel and not supported by competent lost profits evidence. So for these reasons, Your Honor, we think that Harmony House was properly analyzed. We think it is good that the Court set this case for argument so that we'll have precedent that other panels can follow when this case comes again. And we would ask the Court to reverse the district court's judgment. If there are no further questions, I reserve the remainder of my time for rebuttal. Thank you. Thank you. Mr. Duke. Good morning, Your Honors, and may it please the Court. Brandon Duke for Appellee Shannon Jones. We've divided argument among appellees, and I plan to discuss why the trial court was correct. Can you elevate your voice? Yes. Sorry. Apologies. I plan to address why the court was correct in finding that the requested accommodation was therapeutically necessary based off of the evidence presented at trial, the immediate facts, and the weight of the expert testimony. And as the district court recognized in its decision, its findings, its facts findings here, are undoubtedly, I'm going to quote, to the scenario currently before the court and was by no means inevitable. That's record site 1751 of the order below. And indeed, the case law teaches that this finding, the determination of necessity, of therapeutic necessity in this case under the FHA, requires a meticulous case-by-case assessment of the facts and consideration by the trial court based off of that evidence that was presented. And in emphasizing its role, as Judge Duncan recognized, as a fact finder, the trial court correctly determined that based on the needs of the residents at the Stony Point home, the women at the Stony Point home, the 6,000 square foot home, the requested accommodation of 15 residents was therapeutically necessary as compared to the eight person limitation imposed by Plano's city ordinances, which was the only alternative on offer. Were the defendants even required to put forth an alternative? And the reason I ask is because it seems to me that the burden is on the plaintiff to demonstrate that a number is necessary. It's not up to the defendant. The defendant could put on no evidence at all and still prevail. Isn't that right? I think that's right, that they weren't under a burden to provide any alternative. But in order to rely on an alternative, so eight or more than eight, that alternative would actually have to have been offered for it to be relevant. And here what the court said was the evidence it was looking at was what supports eight. We presented evidence that eight was insufficient. To me that could be a problem because a balancing between alternatives is not what the statute calls for, right? Well, I think the statute says what is necessary, and every court that's looked at the specific issue of therapeutic necessity recognizes it's fact specific. There's no set formula that you can put in place. Would you agree that if the district court balanced 15 versus eight and said, well, I think 15 is better than eight, then that would not be necessary? Well, I think if that's what the trial court did, that probably would be insufficient, but I don't think that's what happened here. What the court did was it took the evidence it had for 15 and said, is 15 necessary based off of the evidence presented? I have the expert testimony, the testimony from the residents of the home, and I balanced that against the contrary evidence of what was presented by Plano. I guess my last question is then do you recognize that there is a difference between indispensable and preferable? There definitely is. And here what the testimony was from the expert that the court relied on and the witnesses was that 15 was the minimum. Okay. What's the best evidence from that expert that shows 15 is indispensable? As opposed to just preferable, maybe you get more benefit. Right. And so just because I wrote it down, I was going to cite it. So from 2462 to 2485, this is trial testimony from Dr. Major, he walks through his entire analysis, and in particular at pages 2482 to 2484 of the trial testimony, Dr. Major explains 15 is the minimum necessary, and he bases that off of his research, his survey of Oxford houses and why. It wasn't simply any more is better. More is better generally. But he then looked at the specifics of this home, the makeup of the home, the number of bedrooms, but also the common areas, whether or not there is a potential to isolate. He also looked at the ebb and flow of residents over time, and he said that for this house, for the Stony Point home and its residents, in order to prevent the risk of relapse effectively, in order to enjoy the house on equal footing as everyone else, 15 was necessary for the women at this Stony Point home. Okay. And so I think that's the best evidence, and I would also point to my client, Ms. Jones' testimony, where she explained in detail the nature of her disability but also why the sober living was needed. That's at record site 2409 to 10. And then she also explained why the dip below 15, there was a few-week period over that two-year time, why that dip below caused anxiety, exposed her to the risk of relapse, why she thought it would cause a potential for individuals to be home alone, and that's the risk that Dr. Major was emphasizing. 15 was necessary to replace. And he said it would be preferable to have 21, but 15 was the minimum here for this home. And so I equate minimum with indispensable. The bare minimum is what is necessary. In his testimony, I mean, he just never seemed to go there, in terms of showing beneficial, at least. In his cross-examination, counsel opposite sort of tried to draw him out, but he seemed, I guess I'm asking you, what can we take from his testimony and the cross on him of him establishing the essentiality of the number as opposed to beneficial? Obviously, that's what the other side is saying. You indisputably established beneficial, but how do you get to establishing necessary or essential, which is what the statute says. Right, and I think, at record, this is 2492, is when the cross-examination starts, I think. And there, when pressed, Dr. Major repeatedly emphasized 15 was the minimum. And then when asked whether or not there was an amount below 15 where there would be some therapeutic benefit, that's what he testified to. And my friend on the other side emphasized that testimony, but he left off the word some. There's always going to be some therapeutic benefit to any measure, like some Tylenol might reduce my fever, but it's not going to cure my cold. So some benefit is always existent almost with any number, I think under the record we have, there's some benefit. What here he's saying is what is the critical, what is necessary. Some benefit isn't enough. You need the therapeutic benefit in order to make the housing available and accessible to these women who need sober living. In order for that to work, the minimum amount was 15. I think I'm out of time. Okay, I'll ask the next question. You have rebuttal, I think. No, we don't. Well, I mean, is your position that a Harmony House decision, the unpublished decision from our court is incorrect? No, it's not. So Harmony House, we fully embrace the Harmony House. We think Vorcheimer was correct and Simmons-Hills, that those standards were equally applicable here. The distinction, if I have a moment, between our cases and theirs, is there, I think as Judge Stewart pointed out, or at least what the court pointed out, was that the evidence in Harmony House was a fact determination. The court defined what necessary was and then said they failed to meet their burden, whereas here we have contrary evidence. And I'll just point to one piece of testimony. In Harmony House, there was specific testimony that during the operation of the house, it never reached the amount that Harmony House requested, the 12. It had operated at 6 throughout the period of the case, and there there was benefit received throughout the entire period of time, whereas we have some limited period where we're below 15. At no point was it at 8. There's no evidence really to support 8 at all. And here the evidence showed that when it did dip below, individuals felt like the silver lining was not working because there was a risk of isolation. Thank you. Thank you.  May it please the court. The necessity of an accommodation under the Fair Housing Act is measured by equality in the use and enjoyment of the dwelling. It is not measured by some acceptable level of inequality. The people who live around Harmony House, ordinary folks, have almost no trouble staying sober, keeping their families, keeping their jobs, and avoiding an overdose. Well, you don't know about that. Pardon me? You don't know about that given the prevalence of those problems in society, but we will accept what you're trying to say. Thank you, Your Honor, and I have to agree. The residents of women's elevated sober living have a hard time staying sober. Living in a sober living environment with the support it provides brings them a little closer to equality in the use and enjoyment of the dwelling by making it a little easier for them to stay sober while they live in sober living and after they leave. The thrust of Dr. Major's testimony was that in order for them to get as close to equality with their neighbors as possible was to have the maximum therapeutic benefit, which required 15 women. When the question is equality and you measure necessity by equality, then nothing less than what gets closest to equality can be called necessary. The city of Plano's position is that if eight people give these women a pretty good chance of staying sober, then they don't need 15 women to give them the best chance of staying sober. But while the city of Plano Why would the number be 21 then since the experts said the ideal number is 21? Yes, he did. And, in fact, however, the court had to try the case that was before it and the accommodation requested was 15. The difference between a pretty good chance of recovery or staying sober and the best chance of staying sober is not the same as the difference between a frozen pizza and dinner at Antoine's, which is what the city would probably compare it to, because the results of falling off the wagon for these women and for other addicts in recovery is not a minor inconvenience. It is perhaps the loss of their family, the loss of their job. It might mean that they die. Under these circumstances, measuring necessity by equality in the use and enjoyment of the dwelling has to mean that giving these women the best chance to stay sober and remain sober is necessary. Giving them anything less is not only not necessary, it is not acceptable, and it is not sufficient. Is the term necessary in the statute defined in terms of equality or in some other terms? It's defined exactly in terms of equality. 3604F3B says an accommodation is necessary or may be necessary for the equal use and enjoyment of the dwelling.  The statute does not use words like indispensable or absolutely necessary or any of these other synonyms, but I don't think that the court should find the law in Rage's thesaurus. Well, other courts have, though, correct? Those terms are useful when you're analyzing other situations or when you're trying to understand necessity in terms of particular fact patterns. Other courts have defined necessity in terms of indispensable. Yes, they have, but in every one of those cases, the finding of whether it was necessary, indispensable, and so forth was based on the facts of the particular case and explicitly upon the goal of equality in housing opportunity. So the synonyms may be helpful, but the law is equality. Now, I want to say both experts in this case did agree on one thing. They agreed that the consequences of relapse were devastating. And both experts, well, I'll take that back. I don't believe Judge Mazzan's opinion can be read to suggest that the city of Plano had a burden of proof that it failed to meet. The standard, I believe, and this is clear from the cases, is that once the plaintiff proves that the requested accommodation is necessary and reasonable, then if the city wants to rely on an alternative accommodation, the city must prove that its alternative is equal to the accommodation that has been already proven. In this case, that's what happened. Judge Mazzan found first that we had proved that the accommodation of 15 was necessary. Then he looked at whether the city had shown that its alternative was equal. In the case involving, the earlier case involving the woman who wanted an accommodation concerning, I believe, her stroller or her walker, the explicit finding in the court of appeals was that the four other accommodations offered were all equivalent to what she wanted. And therefore, hers was not necessary because there were three or four other equivalents. What happened in this case is that we proved our accommodation was necessary, and the city of Plano simply failed to prove that its alternative provided an equal level of therapeutic support for the woman. So according to Dr. Major, Harmony House was not providing necessary support when it recommended 12 residents. I'm sorry? In the Harmony House case, the issue is whether 12 residents is necessary. Under the FHA, this court rejected that proposition, but from your argument, if the minimum is 15, then Harmony House is unethical or not seeking the best care. On the contrary, Your Honor. I don't believe Harmony House was incorrectly decided. It was decided on the facts that were available to the court in that record. Dr. Major did not testify that 15 is the number that is always required in any house of any size. So it could be less than 15. It would depend on the house. If you want. Why? Well, because the therapeutic support that Dr. Major testified about depends in part on the size and configuration of the house. It depends on how many women are coming and going. It depends on whether, it depends on all the factors that he looked at. So six to eight could be an acceptable size then? Six to eight would be acceptable if it was the maximum opportunity for the women to stay sober. If six to eight does not maximize the opportunity to stay sober, if there is another larger number that is still reasonable, then that is necessary, giving them the best chance. Harmony House, I read as simply a failure of proof. I believe I read the court's opinion as simply a failure of proof. Well, actually, there was proof that 12, that they had an expert, I believe, who said you had to have at least 12, and the city had put on evidence that there are successful homes that have only six to eight residents. That's true. And the question is not whether a home can be successful with six. As I said, six or eight might give a pretty good chance of staying sober. But necessity is measured by equality, and it is not equal to have a pretty good chance of staying sober. Maybe the argument should be that Ms. Jones has a right under the FHA to be in the maximum in a sober living home that maximizes her chance rather than 12 individuals, because you're talking about what ultimately must be an individualized care decision. It is certainly correct that Ms. Jones has the right to have the maximum chance of staying sober. But I think that that right belongs to every woman who is disabled that stays at Women's Elevated Sober Living. And you're right, it is an individualized inquiry. With sober living, we necessarily look at groups of women because the women come and go over time. And so someone like Dr. Major can't possibly say every single woman who ever lives here will not be able to stay sober with less than 15. He can't say that they will stay sober with 15. All we can do is look at the scientific evidence and his evaluation of the particulars of this House to say what maximizes the chance of recovery, remaining sober, and therefore what gets closest to the goal of equality, because the Fair Housing Act accommodation requirement is about equality in the use of the home. Okay, well, you end where you begin, sir. Yes. Thank you. Thank you, Your Honor. Okay, Mr. Jeffers. Oh, excuse me. Ms. Babazadeh. May it please the Court, Natasha Babazadeh for the United States. To be clear, Your Honor, the parties here don't dispute the definition of necessity. The district court cited to that definition of necessity, and it was the same definition cited by this court in Harmony House. The key issue before this court is how necessity, and specifically therapeutic necessity, applies in the context of sober living homes. And necessity is examined in relation to equal opportunity to use and enjoy a dwelling, and in light of the record and the proposed alternatives. Now, for the context of sober living homes, equal opportunity means residents with substance use disorders are afforded a sufficient social support system within the home to maintain their sobriety and to mitigate the chances that they relapse. So it goes without saying that relapse would deny these residents equal use and enjoyment of the home. And so to serve their purpose, sober living homes must have a critical mass of residents. Courts must conduct a fact-intensive analysis looking at the specific needs of the residents and the circumstances of a particular home to then determine what is this essential minimum number of residents to ensure the success of the venture and to ensure that these residents are receiving therapeutically meaningful benefits. And here the district court, based on the record before it, properly decided within its discretion that plaintiffs met their burden to show that 15 residents was therapeutically necessary. And the city neither provided sufficient evidence to show that the district court here clearly erred in making that finding, nor did it provide sufficient evidence to support any other alternative for the district court to consider here. To the extent it's helpful, Your Honors, I'd like to address some of the other questions that were asked of the parties. Judge Stewart, you mentioned to defense counsel that here Dr. Major, did he have to specify any magical words? No, it is the expert's responsibility to testify in his opinion based on his expertise. It is the district court's role to apply the facts to the law. So the expert doesn't necessarily have to rely on or use terms such as indispensable or essential. But here Dr. Major testified that at a minimum, 15 residents was essential to provide the effective therapeutic environment in this home. And he testified that 21 was ideal. He offered a range. To address the questions about whether there's a more is better standard, you know, that has to take into consideration the externalities of this particular disability. There is no exact science about what is going to be the perfect number in a sober living home. And that is why this requires a fact-intensive analysis. Well, what is fact-intensive about? I mean, what's fact-intensive here is a post hoc decision because women's elevated decided to purchase this home. And then they decided, well, we can put 15 people in here. And then the neighboring residents eventually complain and go to city council that this is an obvious violation of their ordinance. And so this is all backfilling from the conclusion to the reasoning. Because if this home were half its size and it most accommodated, it might accommodate eight people normally and they wanted 10, then you would be backfilling for 10. I don't understand the essential connection between the number of individuals, the welfare of individuals, which is what we're talking about, and the physical configuration of the house. Yes, Your Honor. To be clear, persons with disabilities have the right to the dwelling of their choice. They have every right to live in the neighborhood of their choice. Now, in terms of kind of the considerations of determining that number, courts will consider what are the needs of these specific residents and also the circumstances of the home. And this will go into Dr. Major's testimony about the opportunity to isolate in the home, how many rooms are in the home, ensuring that residents have a roommate. I understand that, but it wasn't the individuals who picked Women's Elevated Living. Women's Elevated Living picked the house and then presumably it interviews the women, right? So you're really talking about the welfare of the institution here. Your Honor, without an effective sober living home, then these residents would be denied an ability to live in that neighborhood. Well, and a lot of residents are denied the ability to live in a lot of neighborhoods, so I still don't understand what, even if Women's Elevated bought this house, what is there that says that Women's Elevated has a right to 15 residents versus 12 residents versus 18 residents? One expert says that, and we have another case that says 6 to 8 residents may be perfectly acceptable for the purposes of achieving and maintaining sobriety. Yes, Your Honor, and you know there is no exact science to this. You're going to have plaintiffs who request an accommodation. They're going to have to present evidence to support their requested accommodation. If they've met their burden, then the city or the defendant could offer additional evidence to demonstrate whether Did this doctor testify to a standard of reasonable medical necessity? He testified, given the circumstances of this particular home, what is the minimum number of residents that would create the effective living social support system within the home. There's no exact science to this. There will never be a magical number, an exact number, you know, that will determine what the number of residents is. That is why plaintiffs will propose a number. They will have to demonstrate and provide evidence for that number, and then if the city wants to provide some other alternative and provide evidence to support that alternative, that's something the district court can also consider. Then you're essentially, I mean, I do think you're sort of fooling around with the burden of proof there. No, no. Plaintiffs have the burden of proof to demonstrate that their requested accommodation is necessary, and it doesn't sound like today, based on the party's arguments, that anyone disputes that. But once they've met their burden, of course, you know, there could be consideration of other alternatives, if evidence is sufficient to support that alternative. The bottom line is that any alternative would have to afford equal use and enjoyment of a home. I do have a question. I've heard discussion about cases from other circuits. Do any of those cases affirm a finding of a number like 15? Your Honor, there hasn't. As far as I'm aware, you know, there aren't. Are you referring to appellate cases? Yes, yes. Yeah, I'm not aware of any appellate courts that have affirmed a number of 15, but to specify, the Sixth Circuit, I think, in Smith and Lee, recognized that a number greater than what the zoning ordinance in that case allowed was necessary, based on the evidence that was there to support that. There's also a handful of district court cases that have recognized a greater number is therapeutically necessary. And then I'd also like to point to the record. Dr. Major testified that in his own neighborhood in Annapolis, Maryland, there are two Oxford homes, sober living homes with 18 residents, that are working successfully. So that's in the record. If there are no further questions, I see that I'm out of time. The United States urges this court to affirm the district courts holding that plaintiff's requested accommodation of 15 residents is therapeutically necessary. Thank you. Okay, thank you. All right, Mr. Jefferson. Just very quickly on the question of burden of proof, I just want to be crystal clear about what our position is on that. It's what you stated, Judge Duncan. The plaintiffs have the burden to show that their desired number was necessary. And if they met that burden, then they would have an additional burden to disprove any alternatives by Plano. Now, here plaintiffs did not meet their initial burden to show that 15 residents was therapeutically necessary. And so there's no need to analyze the propriety of the alternatives. So the district court erred in hinging its analysis on this sort of alternative idea. And the reason I know this is true is because of Harmony House. Harmony House, in that case, they analyzed only the plaintiff's evidence, and the court concluded that on that evidence the plaintiffs had failed in their proof. The court reversed without considering the defendants' alternatives at all. And so I think that's the posture that we're in here. And then secondly, I would just say if we want to know what their definition of necessity is, we can look at Dr. Major's testimony. And as I said in the opening, he said necessary is equivalent to, quote, improving the odds. Basically what he's saying is necessary means better. And every circuit that has addressed that has said that is not the definition that is applied for the FHA. And then finally, I would say, Your Honor, in our reply brief on page 11, in the footnote on that page, if we were to look at alternatives, the plaintiffs themselves said that they had recovered and stayed sober while living in that home with fewer than 15 residents at the home. In other words, they were able to avail themselves of the opportunity to stay in the home and remain sober with fewer than 15 residents. Where's that in the record? Record 2426 and then 2441 through 2442. The sober living manager testified that she didn't have a roommate in another facility and remained sober. That's at 2447. And the plaintiff, Jones, said that she maintained sobriety without sharing a bedroom when the home had only 10 or 11 residents. That's at the record at 2447 to 48. So their own evidence undermines their contention that 15 was necessary, therapeutically necessary, and undermined all the circuits that have found otherwise. So we request that the court reverse the district court's judgment and render judgment for Plano. Thank you, Your Honor. All right. Thank you very much. We are in recess until 9 o'clock tomorrow morning.